UNITED STATES COURT OF APPEALS
NINTH CIRCUIT
_____

No. 11-17070

PETER C. HANSEN,

Appellant - Appellant,

v.

MARK MALLOY, an individual,
STATE OF NEVADA, ex rel., ITS
DEPARTMENT OF PUBLIC SAFETY,
NEVADA HIGHWAY PATROL,

Defendants - Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

APPELLANT'S OPENING BRIEF

JEFFREY A. DICKERSON
9585 PROTOTYPE CT., SUITE A
RENO, NEVADA 89521
(775) 786-6664

Attorney for Plaintiff - Appellant

# TABLE OF CONTENTS

Table of Authorities.........................................................................................3-4

Issues Presented.............................................................................................5

Jurisdiction.......................................................................................................5

Standard of Review.........................................................................................5

Statement of Facts..........................................................................................5

Argument.........................................................................................................9

Conclusion.....................................................................................................16

Certificate of Compliance..............................................................................18

Statement of Related Cases.........................................................................19

Statement Brief Filed is Identical to Electronic Filed Brief...........................20

Certificate of Service.....................................................................................21

## TABLE OF AUTHORITIES

Supreme Court Cases

*Burlington Northern and Santa Fe Ry. v. White*,
548 U.S. 53, 126 S.Ct. 2405 (2006)....................................................13

*Garcetti v. Ceballos*,
547 U.S. 410, 26 S.Ct. 1951 (2006)....................................................12

*Mt. Healthy City School District v. Doyle*,
429 U.S. 274, 97 S.Ct. 568 (1977)....................................................15

Ninth Circuit

*Allen v. Iranon*,
283 F.3d 1070 (9th Cir. 2002)...........................................................16

*Allen v. Scribner*,
812 F.2d 426 (9th Cir. 1987)............................................................13

*Alpha Energy Savers, Inc. v. Hansen*,
381 F.3d 917 (9th Cir. 2004)..........................................................9,16

*Bell v. Clackamas County*,
341 F.3d 858 (9th Cir. 2003)............................................................16

*Clement v. AAWC*,
69 F.3d 321 (9th Cir. 1995)..............................................................15

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003)..............................................12-13,15,16

*Dominguez-Curry v. NDOT*,
424 F3d 1027 (9th Cir. 2005)...........................................................14

*Eng v. Cooley*,
585 F.3d 1062 (9th Cir. 2009)............................................................9

*Fugiwara v. Clark*,
703 F.2d 357 (9th Cir. 1983)............................................................15

*Gillette v. Delmore*,
886 F.2d 1194 (9th Cir. 1989)...........................................................15

*Huppert v. City of Pittsburgh*,
574 F.3d 696 (9th Cir. 2009)..............................................................5

*Johnson v. Duffy*,
588 F.2d 740 (9th Cir. 1978)............................................................14

*Marable v. Nitchman,*
   511 F.3d 924 (9th Cir. 2007)............................................................12

*McKinley v. City of Eloy,*
   705 F.2d 1110 (9th Cir. 1983)............................................................9

*Ostad v. Oregon Health Sciences University,*
   327 F.3d 876 (9th Cir. 2003)............................................................14

*Pool v. VanRheen,*
   297 F.3d 899 (9th Cir. 2002)............................................................9

*Ray v. Henderson,*
   217 F.3d 1234 (9th Cir. 2000)............................................................13

*Schwartzman v. Valentine,*
   846 F.2d 1209 (9th Cir. 1988)............................................................15

*Ulrich v. City and County of San Francisco,*
   308 F.3d 968 (9th Cir. 2002)............................................................9,16

*Yartzoff v. Thomas,*
   809 F.2d 1371 (9th Cir. 1987)............................................................13

District Court Cases

*Ruhlman v. Barger,*
   435 F.Supp. 447 (W.D. Pa 1976)............................................................11

Statutes, Regulations and Court Rules

28 U.S.C. §1291............................................................5

Nevada Administrative Code 284.335............................................................5

Nevada Administrative Code 284.468............................................................5,8,11

Nevada Administrative Code 284.468(1)............................................................10

Nevada Administrative Code 284.468(2)............................................................10

Nevada Administrative Code 284.638............................................................8

4

## ISSUES PRESENTED

Whether the district court erred in granting summary judgment on the public concern element of this First Amendment §1983 action?

Whether genuine issues of material fact remain on the other issues?

## JURISDICTION

This Court has jurisdiction from a final order below.  28 U.S.C. §1291.

## STANDARD OF REVIEW

Review from an order granting summary judgment is *de novo.  Huppert v. City of Pittsburgh*, 574 F.3d 696, 701 (9th Cir. 2009).

## STATEMENT OF THE FACTS

This is a §1983 First Amendment retaliation case.  The district court held Appellant's speech in his grievances related to internal personnel matters and that it was not of public concern.

Appellant is a Highway Patrol Trooper.  ER 164 (Appellant Declaration). His manager, now retired, was Appellee Mark Malloy.  *Id.*  Appellant's claim springs from activity he claims was protected by the First Amendment.

In December of 2007 Appellant received a "does not meet standards" evaluation in statutory enforcement and commercial enforcement.  ER 164 (Appellant Declaration).  Appellant grieved that he was being evaluated contrary to Nevada personnel law, which requires an employee to be evaluated based upon his written work performance standards, NRS 284.335 and NAC 284.468, as opposed to being evaluated against peers' performance.  ER 164 (Appellant Declaration).  Appellant discussed his prior conversations with Sergeant Higgins regarding being rated against co-workers and regional goals as opposed to work performance standards.  ER 153 (Supplemental Answer to Interrogatories 13 and 7).  He discussed

disagreeing on his evaluation based upon that point noting that he was being evaluated against goals set by the division as well as being evaluated against his peers and not being evaluated against his work performance standards. *Id*. The grievance pointed out the meeting with Lieutenant Merschel where Appellant brought up the same points about being rated against the goals of the division and being rated against co-workers and not work performance standards. *Id*. In the grievance, Appellant also discussed his meeting with Lieutenant O'Rourke and Major Malloy where he pointed out that the NAC requires employees to be evaluated against work performance standards and that Appellant's work performance standards and those of other troopers did not list a minimum amount of citations, arrests, and accidents required to be a "standard" employee. *Id*. Appellant complained that rating employees against their co-workers was an unfair practice and did not rate based upon standards. Appellant also noted that rating employees against co-workers is contrary to DPS Standing Orders, Nevada Revised Statutes and Nevada Administrative Code and specifically referred thereto. *Id*. Appellant noted that the manner of evaluation could cause Appellant's performance evaluation to fluctuate based upon the performance of others as opposed to his own performance. *Id*. Appellant noted that there was no documentation from DPS-NHP that indicates that the Director has directed a minimal number of level 1, 2 and 3 inspections per month. *Id*. Appellant further noted that applying the federal  statewide inspection requirement, Appellant had exceeded that if he were available the entire year. *Id*. Appellant also noted that he had viewed an evaluation of another trooper who was not compared to his co-workers, to regional goals or to the CVSP. *Id*. Appellant proposed a solution to ensure that the evaluation process adhered to the requirements

6

of DPS standing orders, NRS and NAC with respect to work performance standards and to change current work performance standards to accurately reflect the duties of troopers as they are assigned and as to what expectations there are.  *Id*.

After this, Appellant was reassigned from commercial enforcement to traffic enforcement, with the assurance that he would return to commercial enforcement when another trooper returned to traffic enforcement.  ER 164 (Appellant Declaration).  When that trooper returned, Malloy did not place Appellant back into commercial enforcement. ER 164 (Appellant Declaration).

Appellant called Malloy's Chief and protested this was retaliation for filing the 2007 grievance.  ER 165 (Appellant Declaration).  The Chief cannot recall "retaliation" being mentioned in the context of what was discussed, but Appellant's testimony makes it clear Appellant did, ER 165 (Appellant Declaration), and thus, on summary judgment, the district court should have credited Appellant's assertion.

Appellant was then assigned to do a blend of commercial and traffic work, which was still not entirely consistent with the prior understanding that he would be returned to commercial full-time. ER 165 (Appellant Declaration).

In December of 2008, Appellant was provided with a negative performance evaluation, this time accompanied by a written reprimand.  ER 165 (Appellant Declaration).  These suffered the same deficiencies and Appellant's grievance asserted the same grounds.  ER 165 (Appellant Declaration).  Appellant noted that the manner of evaluation was contrary to Nevada Administrative Code 284.468 and .638.  ER 153 (Supplemental Answers to Interrogatories Nos. 13 & 7).  Appellant noted in his grievance that the manner of evaluation was contrary to NAC 284.468, *supra*,  and that the

reprimand was contra to NAC 284.638, ER 165 (Appellant Declaration), which provides in part:

1.  If an employee's performance falls below standard or if an employee's conduct comes under one ... , the supervisor shall inform the employee promptly and specifically of the deficiencies.

2.  If appropriate and justified, following a discussion of the matter, a reasonable period of time for improvement or correction may be allowed before initiating disciplinary action.

3.  In situations where an oral warning does not cause a correction of the condition or where a more severe initial action in warranted, a written reprimand prepared on a form prescribed by the Department of Personnel must be sent to the employee and a copy placed in the employee's personnel folder which is filed with the Department of Personnel.

Following this grievance, Appellee told Appellant that Appellant would remain in traffic until his quotas increased. ER 165 (Appellant Declaration).

Malloy's Chief had always maintained an open-door policy for troopers, as evidenced by the previous call that he entertained from Appellant without consequence. ER 165 (Appellant Declaration). Appellant attempted to contact the Chief with respect to this new grievance. ER 165 (Appellant Declaration). The Chief's assistant, Major Tony Almarez, returned the call and advised Appellant that he had to go through the chain-of-command (meaning to Malloy). ER 165 (Appellant Declaration).

Days later, Appellant was served with a five-day suspension. ER 165 (Appellant Declaration).

During the pre-disciplinary hearing on this suspension, the hearing officer (a department employee and subordinate to the Chief) indicated that "next disciplinary action would warrant termination." ER 165 (Appellant Declaration).

Appellant appealed the suspension to a hearing.  ER 165 (Appellant Declaration).   The basis for the suspension was incompetence, willful disobedience and insubordination.  ER 165 (Appellant Declaration).  In order to resolve the matter, Appellant accepted the suspension, with Appellee retracting the grounds of insubordination and willful disobedience.  ER 165 (Appellant Declaration).

## ARGUMENT

In order to establish a *prima facie* case of retaliation or reprisal, plaintiff must prove three elements: (1) participation in protected activity known to the retaliator, (2) an employment actions which was adverse, and (3) causal connection between the first two elements.  *Eng v. Cooley*, 585 F.3d 1062, 1070 (9th Cir. 2009); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 976 (9th Cir. 2002).

Speech constitutes a matter of public concern if the speech is about "potential or actual discrimination, corruption, or other wrongful conduct by government agencies or officials." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004).  Matters relating to the inefficient performance of a public agency is typically a matter of public concern.  *Pool v. VanRheen*, 297 F.3d 899, 907 (9th Cir. 2002); *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983).

Although the context and form of the grievance was personal to Appellant's personal employment situation, its content espoused a matter of public concern, claiming that Appellant was evaluated contrary to Nevada personnel law for State employees, which requires an employee be evaluated based upon his written work performance standards as opposed to being evaluated against his peers.  Appellees argued this speech related only to

Appellant's "substantially low enforcement activity." ER 737 (Motion at 17:7-8). The *context* of the speech was Appellant's response to criticism of his low enforcement activity.[1] This context does not change the *content* of Appellant's speech, and also ignores that Appellant brought his grievances outside the agency to the EMC, an independent board appointed by the Governor.

NAC 284.468(1) and (2) provide in part:

1.    A standard for the performance of work is a written statement prepared on a form prescribed by the Department of Personnel of the results or behavior, or both, expected of an employee when the job elements of the employee's position are satisfactorily performed under existing working conditions.

2.    The appointing authority is responsible for ensuring that each position has standards and that each employee is evaluated using those standards. ...

Malloy was Appellant's appointing authority.

ER 760-47 (Docket 17) is the order below denying the motion to dismiss. The district court, at ER 763 (4:16-26), held Malloy's performance on these issues qualified as public concern. ER 760 (Docket 17, 4:27-5:12). Appellant's allegations rendered  "the content of Hansen's speech . . . a matter of public concern." *Id.* at ER 760 (5:5-6). The district court further noted that Appellant did not express his views to "the press or representatives of the public at large, but this does not defeat his claim." *Id.* Now, at the motion for summary judgment stage, the evidence and not mere allegations supported the claim and the district court should have found Appellant's

---

[1]

Appellees pointed out below Appellant did not grieve his 2006 evaluation.  Appellant did not learn that he was to be rated against work performance standards until the time to grieve his 2006 evaluation passed. ER 166 (Appellant Declaration).

comments about Malloy's behavior on this issue to be proven to be of public concern.

Appellant's not being evaluated against work performance standards is of public concern. There is a substantial question presented in terms of public policy as to whether employees should be evaluated against quotas. State law requires evaluation of performance of a State employee against his or her work performance standards. NAC 284.468, *supra*. An official not following this law is misconduct that is of public concern. An official deviating from the work performance standards is of public concern. At least one district court has agreed that speech against quotas is of public concern. *Ruhlman v. Barger*, 435 F.Supp. 447, 450 (W.D. Pa 1976) (the "existence of a quota system for traffic arrests at a State Police Barracks is a matter of legitimate public interest."). The conclusion about Appellant's performance via comparison to statistics for others that were not part of his work performance standards is illegal. Comparing troopers based on quotas outside work performance standards has to be of public concern as it pertains to how troopers' performance, and in turn the agency's performance, are evaluated. Troopers could be down-rated because they were lax, or because others were engaging in more enforcement activity than warranted, in order to meet their quotas. Quotas raise the potential for unwarranted enforcement activity. That is a public concern. Appellant's speech on this issue, apart from and in addition to addressing Malloy's errant behavior, should be held to be a matter of public concern.

Appellant was also advancing a criticism of the performance of official duties by public officials in a public agency, in asserting that they were violating the law. The district court, in ruling on the earlier motion to dismiss,

found this speech met the public concern test.

The report of Malloy's retaliation to the Chief was of public concern as it pertained to Malloy's performance as a public official. Appellant was concerned about his continued status as a qualified commercial trooper. Appellant's testimony makes clear he told the Chief that Malloy was punishing him for his grievance. As evidenced by the Chief's testimony and responsive memo, Appellant's complaint was ignored, and a suspension issued days later.

Appellant's report must fall outside of his job duties to be protected. *Garcetti v. Ceballos*, 547 U.S. 410, 421, 26 S.Ct. 1951 (2006). Appellees did not argue Appellant's speech was part of his job duties. Advancing criticism of the performance of official duties by public officials in a public agency, in asserting that they were violating the law, is not part of Appellant's job duties as a trooper. *See, e.g., Marable v. Nitchman*, 511 F.3d 924 (9th Cir. 2007) (speech outside of the chain-of-command concerning corruption within the chain-of-command was not part of the ferry engineer's job duties); *Freitag v. Ayres*, 468 F.3d 528 (9th Cir. 2006)(a correctional officer's job duties did not include reports outside of the department and potentially did not include a report within the department to the Director.).

Thus, Appellant's speech activity should be found to be protected speech as a matter of law.

The test for adverse action is whether the action is reasonably likely to deter protected activity. *Coszalter v. City of Salem*, 320 F.3d 968, 974-977 (9th Cir. 2003); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Reassignment is a recognized adverse action. *Burlington Northern and Santa Fe Ry. v. White*, 548 U.S. 53, 71-2, 126 S.Ct. 2405 (2006) (finding

reassignment to track labor less desirable even though within job duties; noting whether the re-assignment is materially adverse was a jury question under those circumstances); *Allen v. Scribner*, 812 F.2d 426, 428 (9th Cir. 1987) (reassignment of duties was adverse action). While Appellant understands the reason for his initial reassignment to traffic, Appellant does claim the delay in returning him to commercial was an adverse employment action, and that it was related to his speech, based upon its timing and based upon Malloy's rationale being, in essence, opposition to Appellant's speech. A negative evaluation is an adverse employment action. *Ray, supra* at 1241*; Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Appellants' 2008 evaluation and reprimand were negative and continued to apply the methodology Appellant protested. The reprimand was unwarranted, piled on top of the evaluation. Oral warnings should precede a written reprimand, and Appellant had received none that year before receiving the reprimand. ER 166 (Appellant Declaration). The further threat of termination was also an adverse action. *Cozalter, supra* at 976-7. Indeed, this was the precursor to more severe discipline, setting up a "progressive discipline" argument to support the suspension coming just a few months later. A suspension is a tangible adverse employment action. *White, supra*. The fact Appellee voluntarily eliminated two of the grounds for the suspension did not erase the adverse action. *White, supra* (suspension was an adverse action even though employee was reinstated with back pay). Erasing those grounds creates an inference they were unwarranted in the first place.

Appellees argued below that the suspension cannot be used as an adverse action, because it was factually supported, Malloy's supervisors agreed with it, and ultimately Appellant agreed to it.

The suspension refers to Appellant being advised not to spend time at the fire department.  Appellant was never so advised.  ER 166 (Appellant Declaration).  When advised by the suspension, he complied.  *Id.*  Malloy's utter disregard for Appellant's criticism of the evaluation process and Malloy's ensuing fervor in deviating from work performance standards evidence his opposition to Appellant's speech.  Findings of Malloy's supervisors are irrelevant because the reasons they saw to support Malloy's actions could be masking retaliatory motives.  The intercession of non-retaliatory thinkers to the decision-making process does not insulate the retaliator.  *Ostad v. Oregon Health Sciences University*, 327 F.3d 876, 882-3 (9th Cir. 2003) (later decision affirming initial recommendation cannot insulate manager's discriminatory acts); *see also Dominguez-Curry v. NDOT*, 424 F3d 1027, 1039-40 (9th Cir. 2005) (jury question of whether subsequent decision was independent of original decision-maker's bias); *Johnson v. Duffy,* 588 F.2d 740, 743-4 (9th Cir. 1978) (Appellee liable for setting in motion events that had led to constitutional violation).  Here, neither of Malloy's supervisors initiated his own investigation.  They simply reviewed Malloy's charges and upheld them.  Appellant's agreement to the re-worded suspension does not undo the adverse employment action – it was and still is an adverse employment action.

Appellees invoked estoppel below, with no authority.  Appellees knew the true facts – Appellant intended to file suit despite the agreement on the suspension.  Appellant had insisted upon removal of the release language.  ER 165 (Appellant Declaration).  The agreement does not release the §1983 claim.  *Id.*

Appellees argued the pre-disciplinary hearing officer's threat of

termination absent improvement was not an adverse employment action. *Coszalter, supra* at 976-7, teaches that a threat of discipline can constitute an adverse action.

Lastly, Appellees argued that regardless of protected activity, the same adverse actions would have occurred. Appellant does not have the burden of proof on this issue; Appellees do. Insofar as the First Amendment goes, this is Appellees' burden of <u>proof</u>, not just of production. *Clement v. AAWC*, 69 F.3d 321, 324 (9th Cir. 1995); *Gillette v. Delmore*, 886 F.2d 1194, 1198 (9th Cir. 1989); *accord Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568 (1977). Appellees must show not that they could have made the same decisions, but that they <u>would have</u>. *See Schwartzman v. Valentine*, 846 F.2d 1209, 1212 (9th Cir. 1988); *Fugiwara v. Clark*, 703 F.2d 357, 361 (9th Cir. 1983) ("The mere existence of other grounds for firing does not suffice."). Appellees must show by a preponderance of the evidence that they *would* have reached the same decision or done the same things in the absence of the protected conduct, not merely whether they *could* have. The above creates issues of material fact as to whether, regardless of the protected activity, the same adverse actions would have occurred. There is also evidence that another trooper was not evaluated with the same methodology, a trooper who did not speak out about it as Appellant did. ER 166 (Appellant Declaration). That trooper's evaluation is Exhibit 1 to ER 168-179 (Appellant Declaration). *Id.*

There are three basic ways to show causation: (1) pretext, (2) opposition to the protected activity, and (3) temporal proximity. *Ulrich*, 308 F.3d at 980. Temporal proximity can supply a reasonable inference of causation or substantial motivating factor. *Coszalter v. City of Salem*, 320

F.3d 968, 977-8 (9th Cir. 2003); *Bell v. Clackamas County*, 341 F.3d 858, 865-6 (9th Cir. 2003); *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002). Proximity of three to eight months supports an inference of retaliation. *Alpha Energy Savers Inc. v. Hansen*, 381 F.3d 917, 926-7 (9th Cir. 2004). In contemporaneous temporal proximity to the pendency of his grievance, Appellant was reassigned from commercial to traffic with the understanding that he would return to commercial when the injured trooper returned to work full-duty. When the injured worker returned to full-duty Appellant was kept in traffic. A reasonable juror could conclude this was Malloy's intent from the onset of the reassignment, to use it to cause Appellant to back-off on his grievance. Appellant got partway back to commercial, but only after using Chief Perry's open door to claim retaliation. Malloy then told Appellant that Appellant would remain in traffic until his quotas increased. Appellant attempted to contact the Chief. Almarez advised Appellant to use the chain-of-command, meaning go to Malloy. Before the second grievance, it was the Chief's open door, now it was the Chief's closed door. Days later, Appellant was served with a five-day suspension. Appellee eventually removed two of the grounds for the suspension, demonstrating those were a pretext for the suspension.

## CONCLUSION

Based upon the foregoing, the district court erred in entering summary

/ / /

/ / /

/ / /

/ / /

/ / /

judgment for the Appellees.

DATED this 22nd day of February, 2012.

LAW OFFICE OF
JEFFREY A. DICKERSON

/S/ Jeffrey A. Dickerson
JEFFREY A. DICKERSON

17

<u>Certificate of Compliance Pursuant to Fed.R.App. 32(a)(7)(c)</u>
<u>and Circuit Rule 32-1 for Case Number 11-17070</u>

I certify that pursuant to Fed.R.App. 32(a)(7)(c) and Ninth Circuit Rule 32-1, the attached opening brief is proportionately spaced, has a typeface of 14 or more and contains 3944 words.

DATED 22nd day of February 2012.

LAW OFFICE OF
JEFFREY A. DICKERSON

/S/ Jeffrey A. Dickerson
JEFFREY A. DICKERSON

18

## STATEMENT OF RELATED CASES

There are no known related cases pending before this Court.

DATED this 22nd day of February, 2012.

LAW OFFICE OF
JEFFREY A. DICKERSON

/S/ Jeffrey A. Dickerson
JEFFREY A. DICKERSON

The undersigned certifies that Appellant's Opening Brief filed herein is identical to the one filed electronically.

DATED this 22nd day of February, 2012.

LAW OFFICE OF
JEFFREY A. DICKERSON


/S/ Jeffrey A. Dickerson
JEFFREY A. DICKERSON

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 22nd, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system as follows:

Michael D. Jensen

/S/ Jeffrey A. Dickerson
JEFFREY A. DICKERSON